**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| #1 JANE DOE, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-02430-JMG |
| | : | |
| ALEJANDRO MAYORKAS, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **October 28, 2021**

Plaintiff Jane Doe #1, an unauthorized immigrant physically present in the United States, has been waiting four years for adjudication of her U Visa petition. She seeks an Order from this Court requiring the Government to make a decision on her application, one way or another. The Department of Homeland Security (DHS), as Defendant, claims this Court has no authority to consider Plaintiff's request. It argues that Congress has delegated to the Secretary of DHS the discretion over adjudicating such Visas, to the specific exclusion of the federal courts. In granting the motion in part, we find that the case is properly before us and that Plaintiff has properly stated claims upon which relief can be granted.

## I.     BACKGROUND

### A.     Introduction

Plaintiff Jane Doe #1 is a Mexican citizen who entered the United States with her ex-husband in 2002. Compl. ¶ 50, ECF No. 1. "She is not . . . legally authorized to be present in the United States." *Id.* ¶ 21. Her daughter, Jane Doe #2, entered the United States in 2005 and is a recipient of the Deferred Action for Childhood Arrivals Program. *Id.* ¶ 22.

Jane Doe #1 endured "constant physical and mental abuse from her husband" after she

immigrated to the United States. *Id.* ¶ 54. In 2003, she secured a protection from abuse order, which her ex-husband subsequently violated. *Id.* ¶¶ 54–55. "Jane Doe #1 reported the violation of the protective order to the police, answered all questions posed to her by responding officers, described what her husband did to her, and identified where he might be found." *Id.* ¶ 56. Her ex-husband ultimately pleaded guilty to criminal contempt. *Id.* ¶ 57.

On March 6, 2017, Jane Doe #1 filed a Form I-918 petition for a U Visa, along with a supplemental petition on Jane Doe #2's behalf. *Id.* ¶¶ 59–60. Four years have passed and the United States Citizenship and Immigration Service (USCIS) has taken no further action. *Id.* ¶ 61.

### B.    Statutory and Regulatory Framework

Resolution of this motion turns on interpretation of a complex statutory and regulatory scheme. An overview of the relevant authorities follows.

#### i.    The U Visa Program

In October 2000, Congress amended the Immigration and Nationality Act (INA) and created the U Visa program. *See* 8 U.S.C. § 1101(a)(15)(U). U Visas afford qualified individuals with temporary resident status and employment authorization. *See* 8 U.S.C. § 1184(p)(3)(B). Qualified individuals include "victims of rape and other specified crimes who have cooperated, or are likely to cooperate, in the investigation and prosecution of those crimes." *Contreras Aybar v. Sec'y U.S. Dep't of Homeland Sec.*, 916 F.3d 270, 272 (3d Cir. 2019) (citing 8 U.S.C. § 1101(a)(15)(U)(i)).[1]

"If an individual wishes to apply for a U Visa, they must submit a Form I-918 Petition for

---

[1]    "Certain U-Visa benefits also extend to qualifying family members. Persons who are seeking or have already obtained permanent resident status based on their receiving a U Visa, such as [Jane Doe #1], may seek that status for a qualifying family member," such as Jane Doe #2. *Contreras*, 916 F.3d at 272; *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, --- F.4th ----, 2021 WL 4144034, at *2 (6th Cir. Sept. 13, 2021) ("Noncitizens . . . can seek U-nonimmigrant status for their qualifying family members . . . ."); 8 C.F.R. § 214.14(f).

U Nonimmigrant Status along with a sworn certification from law enforcement personnel stating that the individual applying for a U Visa was a victim of a qualifying crime, has information about the qualifying crime, and has been helpful to an investigation or prosecution regarding the qualifying crime." *Doe #1 v. Wolfe*, No. 1:20-cv-02339, 2021 WL 4149186, at *1 (M.D. Pa. Sept. 13, 2021) (citing 8 C.F.R. § 214.14(c)).

Only 10,000 U Visas can be issued each year. *See* 8 U.S.C. § 1184(p)(2)(A).[2]  Once USCIS reaches this annual cap, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list."  8 C.F.R. § 214.14(d)(2) (emphasis added). USCIS grants deferred action[3] to "U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list."  *Id.*  Individuals on the waitlist are also eligible to receive work authorization.  *Id.*

In sum, there are "three stages in the U-Visa process: (1) application submitted but not yet approved; (2) application approved and alien placed on a waiting list; and (3) U-Visa granted." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 361 (4th Cir. 2021); *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, --- F.4th ----, 2021 WL 4144034, at *2 (6th Cir. Sept. 13, 2021).  Plaintiffs in this case remain in the first stage.

        ii.      *Bona Fide Determination Process*

"The Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, *bona fide* application" for a U Visa.  8 U.S.C. § 1184(p)(6) (emphasis added).

---

[2]      In practice, USCIS receives far more than 10,000 petitions annually.  In 2020, for example, USCIS received 22,358 petitions from victims of crime.  *See* USCIS, NUMBER OF FORM I-918, PETITION FOR U NONIMMIGRANT STATUS BY FISCAL YEAR, QUARTER, AND CASE STATUS, https://www.uscis.gov/sites/default/files/document/reports/I918u_visastatistics_fy2021_qtr1.pdf (last visited Oct. 18, 2021).

[3]      Deferred action is "an act of administrative convenience to the government which gives some cases lower priority" for removal.  8 C.F.R. § 274a.12(c)(14).

Pursuant to this language, in June 2021, USCIS implemented a new "Bona Fide Determination Process" (the "BFD process"). *See* USCIS, POLICY MANUAL, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited Oct. 18, 2021). "The BFD process provides an opportunity for certain petitioners to receive [work authorization] and deferred action while their petitions are pending." *Id.*

Pending U Visa petitions now proceed along one of two possible tracks. First, USCIS "determines whether a pending petition is bona fide." *Id.* A bona fide petition is one "made in good faith; without fraud or deceit." *Id.* (quoting Black's Law Dictionary (11th ed. 2019)). Petitions that are not bona fide are evaluated for waitlist eligibility. *Id.* By contrast, for bona fide petitions, USCIS evaluates "whether the petitioner poses a risk to national security or public safety by reviewing the results of background checks, and considers other relevant discretionary factors." *Id.* "If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them [work authorization] and grants deferred action." *Id.* USCIS has created a helpful flowchart that depicts these parallel tracks.[4]

In sum, deferred action and work authorization are no longer exclusive to petitioners placed on the U Visa waitlist; bona fide petitioners can also receive those benefits.

## II.    STANDARD

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The Government first moves to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When faced with such a motion, courts must first determine whether it presents a

---

[4]    *See* USCIS, POLICY MANUAL, Vol. 3, Part C, Ch. 5, Appendix: Bona Fide Determination Process Flowchart, https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf (last visited Oct. 18, 2021). The flowchart references "EADs," which are work authorization documents.

"facial" or "factual" attack.  The former "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  The latter "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.*

The instant motion presents a facial attack.  Defs.' Mem. 8, ECF No. 14.  As a result, the Rule 12(b)(6) standard of review applies: the Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the Plaintiffs' favor.  *Aichele*, 757 F.3d at 358.

### B.      Motion to Dismiss for Failure to State a Claim

The Government also moves to dismiss for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008).

Third Circuit courts deploy a three-step analysis when faced with motions to dismiss.  First, the Court identifies "the elements [the] plaintiff must plead to state a claim."  *Connelly*, 809 F.3d

at 787 (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court identifies "allegations that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, the Court assumes the veracity of well-pleaded factual allegations, "and then determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  For purposes of this analysis, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff."  *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III.   CLAIMS

Plaintiffs raise two claims.  The first claim arises under the Administrative Procedure Act (APA).  Count I asks the Court to conclude: (1) that USCIS has violated its "nondiscretionary obligation to determine Jane Doe #1's eligibility for placement on the U-visa waiting list within a reasonable time"; (2) if USCIS determines that Jane Doe #1 qualifies for the waitlist, USCIS has a "nondiscretionary duty to place her on the waiting list, grant her deferred action, and grant her employment authorization"; and (3) if USCIS places Jane Doe #1 on the waitlist, USCIS has a "nondiscretionary duty to grant Jane Doe #2, her qualifying family member, deferred action."  Compl. ¶¶ 63–65.

The second claim arises under the Mandamus Act.  *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").  Jane Doe #1 alleges that she "satisfies each of the requirements for the issuance of a writ of mandamus compelling Defendants to determine her eligibility for a U-visa or alternatively to be placed on the U-visa waiting list."  Compl. ¶ 72.

## IV.    DISCUSSION

### A.    Subject-Matter Jurisdiction

#### i.    *APA*

Defendants first argue that the APA does not provide a basis for federal question jurisdiction over Plaintiffs' claims.  Defs.' Mem. 11.

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  This section of the APA reflects a "'strong presumption' favoring judicial review of administrative action."  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015).  As relevant here, a "failure to act" amounts to "agency action" under the APA.  *See* 5 U.S.C. § 551(13).

Agency action, however, is not always reviewable.  Judicial review is unavailable where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law."  *Id.* §§ 701(a)(1)–(2).  And the Court can only "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1); *see also id.* § 555(b) (providing that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it").  So claims of unreasonable delay "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  "[W]here an agency is not required to do something, we cannot compel the agency to act—let alone to act faster."  *Gonzalez*, 985 F.3d at 366 (citing *Norton*, 542 U.S. at 63 n.1).

Defendants point to §§ 701(a)(1)–(2) and 706(1) and argue that "an agency's *pace* of adjudication is discretionary and thus not reviewable."  Defs.' Mem. 14 (emphasis added).  This

argument is unavailing.  While Defendants are not required to process U Visa petitions within a set timeframe, "[t]he absence of a specified deadline within which action must be taken does not change the nature of USCIS' obligation from one that is ministerial and *mandatory* to a matter within the agency's *discretion*."  *Lara v. Mayorkas*, No. 1:20-cv-4508-CAP, 2021 WL 3073690, at *3 (N.D. Ga. Apr. 16, 2021) (emphasis added) (quoting *Sultan v. Roark*, No. 2:09-cv-02158-GEB-EFB, 2010 WL 1992195, at *5 (E.D. Cal. May 13, 2010)).  Petitioners eligible to receive U Visas but for the annual cap *must* be placed on the waitlist.  *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list . . . ." (emphasis added)); *see also Gonzalez*, 985 F.3d at 374 n.10 ("[T]he agency has committed itself by regulation to place eligible applicants on the waiting list.").  Waitlist adjudications, therefore, are nondiscretionary, and USCIS must take that action "within a reasonable time."  5 U.S.C. § 555(b); *see also Barrios Garcia*, 2021 WL 4144034, at *11 ("DHS's own regulations state that placing principal petitioners who are eligible for U-visas on the waitlist is nondiscretionary." (citing 8 C.F.R. § 214.14(d)(2))).  "So the federal courts may determine whether USCIS unlawfully withheld or unreasonably delayed the placement of the principal petitioners on the U-visa waitlist."  *Barrios Garcia*, 2021 WL 4144034, at *15; *see also Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.  This result is explicitly foreclosed by the APA.").

 The most recent appellate court decisions to consider this topic reach the same conclusion. *See Gonzalez*, 985 F.3d at 374 n.10; *Barrios Garcia*, 2021 WL 4144034, at *15.  District courts, however, are split.[5]

---

[5] *Wolfe* frames the issue well: "[T]he question before the court is whether the pace by which the USCIS determines whether petitioners qualify for the U Visa waiting list is a non-reviewable discretionary matter."  2021

Defendants find support in *Lemus v. McAleenan*, No. 20-3344, 2021 WL 2253522 (D.N.J. June 3, 2021), another case that challenged USCIS' handling of U Visa petitions. In *Lemus*, the court concluded that it lacked subject-matter jurisdiction over Plaintiff's claims of unreasonable delay. 2021 WL 2253522, at *5. As here, the defendants argued that "the pace of [U Visa] adjudication is discretionary." *Id.* Their argument hinged on a provision of the INA that provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion of* the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Congress, in turn, afforded the Secretary of Homeland Security discretion to issue regulations governing nonimmigrant admissions. *See id.* § 1184(a)(1) ("The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as [the Secretary of Homeland Security] *may* by regulations prescribe . . . ." (emphasis added)). Defendants argued that these statutes, taken together, "grant[] discretion over the promulgation of regulations for adjudicating U visas[,] which necessarily includes discretion over the pace of adjudication." *Lemus*, 2021 WL 2253522, at *5 (internal quotation marks and citation omitted).[6]

---

WL 4149186, at *4. Several district courts—particularly those within the Eleventh Circuit—have answered this question in the affirmative. *See, e.g.*, *Richard v. U.S. Citizenship & Immigr. Servs.*, No. 2:20-cv-14321-KMM, 2021 WL 4129164, at *7 (S.D. Fla. Sept. 9, 2021) ("[S]ubject matter jurisdiction is lacking over disputes challenging the pace at which the USCIS adjudicates petitions."); *Hasan v. Wolf*, --- F. Supp. 3d ----, 2021 WL 3360133, at *4 (N.D. Ga. July 23, 2021) ("The absence of a congressionally imposed deadline or timeframe to complete the adjudication supports the conclusion that the pace of adjudication is discretionary."). "Other courts have found that claims of unreasonable delay are reviewable, distinguishing (1) the USCIS's discretion to *grant* or *deny* U-visa applications from (2) the agency's non-discretionary duty to *actually adjudicate* those applications in the first place." *Moreno v. Wolf*, No. 1:20-cv-3921-TWT, 2021 WL 4272345, at *3 (N.D. Ga. Sept. 1, 2021) (emphasis in original) (collecting cases); *see, e.g.*, *Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787-MLB, 2021 WL 3603373, at *5 (N.D. Ga. Aug. 13, 2021) ("USCIS is required to determine whether a petitioner is eligible for a U Visa (even if the ultimate decision to issue such a visa is discretionary) and must also place eligible petitioners on the waiting list if the cap applies." (citations omitted)).

[6]     Defendants make the same argument here. *See* Defs.' Mem. 15.

The *Lemus* court credited defendants' argument. It emphasized that "if the discretion to promulgate regulations did not include discretion over the pace of adjudication, the grant of discretion would be illusory, given that courts could drastically alter the regulations prescribed by dictating what pace of adjudication the regulations must permit." *Id.* (internal quotation marks and citation omitted). It also highlighted "the absence of any congressionally mandated deadline" for the adjudication of U Visas: "If there is no meaningful standard against which to judge the agency's exercise of discretion, Congress intended such agency action to be unassailable." *Id.*[7]

This Court declines to follow *Lemus*. Section 1252(a)(2)(B)(ii) of the INA strips federal courts of jurisdiction "only when Congress itself set[s] out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). While Defendants purport to find that discretionary authority in section 1184(a)(1), that section "does *not* address the pace at which USCIS must adjudicate U visa petitions." *Bustos v. Mayorkas*, No. 20-1348, 2021 WL 3931173, at *4 (D.N.M. Sept. 2, 2021) (emphasis added); *see also Doe #1 v. McAleenan*, No. 19-2216, slip op. at 3 n.1 (E.D. Pa. Sept. 23, 2019) ("[D]iscretionary authority to determine the pace of application processing is not specified . . . ."). Nor does that section afford discretion to

---

[7]        Defendants also cite *Canevaro v. Wolf*, --- F. Supp. 3d ----, 2021 WL 2283870 (N.D. Ga. May 20, 2021). There, plaintiffs alleged that USCIS "has unreasonably delayed adjudicating their U Visa petition and placing them on the U Visa waitlist." *Id.* at *1. The court concluded that "such claims are non-reviewable." *Id.* at *4. Like *Lemus*, the court emphasized the lack of a congressionally mandated timeline for the adjudication of U Visas: "Because there are no requirements, statutory or regulatory, regarding when USCIS must determine which petitioners are waitlist eligible, Plaintiffs' claims are non-reviewable." *Id.* at *5; *see also Butanda v. Wolf*, 516 F. Supp. 3d 1243, 1248 (D. Colo. 2021) ("The lack of a Congressionally mandated timeline and the concomitant grant of discretion to determine the 'time' and 'conditions' of admitting U-Visa applicants renders the pace of adjudication non-reviewable under Section 1252." (quoting 8 U.S.C. § 1184(a)(1))). However, the lack of a set deadline is not necessarily dispositive. *See, e.g.*, *Moreno*, 2021 WL 4272345, at *3 ("It is not enough to *infer* discretion from the absence of a statutory deadline . . . ." (emphasis in original)); *cf. Rodriguez v. Nielsen*, No. 16-cv-7092, 2018 WL 4783977, at *12 (E.D.N.Y. Sept. 30, 2018) ("[A] lack of a timeframe alone does not render the statute optional." (citation omitted)). "Because USCIS *must* adjudicate U-Visa petitions, it follows that they must do so within a reasonable amount of time. Were it otherwise, USCIS could hold U-Visa petitions in abeyance indefinitely, without providing any reasoned basis for doing so, and thwart Congress's *mandate* that USCIS adjudicate U-Visa petitions."  *Mondragon Tinoco*, 2021 WL 3603373, at *5 (emphasis added). A contrary holding would also thwart Congress's stated intent that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).

"indefinitely delay adjudicating U-visa applications." *Moreno v. Wolf*, --- F. Supp. 3d ----, 2021 WL 4272345, at *3 (N.D. Ga. Sept. 1, 2021); *see also Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 89 (D.S.C. 2020) ("[T]he court finds no support for concluding that Congress granted DHS unfettered discretion over the U Visa adjudication process such that USCIS could simply not adjudicate a petition."). Absent explicit statutory language granting USCIS discretion over the pace of U Visa adjudication, this Court chooses to honor "the presumption favoring judicial review of administrative action." *Kucana*, 558 U.S. at 251. In other words, "[i]t is not enough to *infer* discretion from the absence of a statutory deadline; Congress must have 'state[d] explicitly or in detail' that discretion." *Moreno*, 2021 WL 4272345, at *3 (quoting *Kucana*, 558 U.S. at 243 n.10).

It also bears emphasizing that this strict interpretation of Section 1252(a)(2)(B)(ii) is mandated by Third Circuit precedent. *See Khan v. Att'y Gen.*, 448 F.3d 226, 232 (3d Cir. 2006) ("[Section] 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority *specified in the statute*." (emphasis in original) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005))); *cf. E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) (recognizing the "general rule that the narrower construction of a jurisdiction-stripping provision is favored" (internal quotation marks and citation omitted)).

Judge Dalzell endorsed this reading in *Han Cao v. Upchurch*, 496 F. Supp. 2d 569 (E.D. Pa. 2007). There, plaintiffs requested an order compelling USCIS "to act on their applications to adjust their immigration status to that of permanent residency." *Id.* at 571. In moving for dismissal, Defendants pointed to 8 U.S.C. § 1255(a), which states that "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added). That statute,

Defendants argued, supplied the sort of discretionary authority that triggers Section 1252(a)(2)(B)(ii)'s jurisdictional bar. *See Upchurch*, 496 F. Supp. 2d at 572–73.

The court concluded that it had subject-matter jurisdiction over the action. *Id.* at 573. It emphasized that the "discretion giving rise to the jurisdictional bar must be 'specified' by statute." *Id.* (quoting *Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 146 (3d Cir. 2004)). "While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it *says nothing about the pace of such a decision*, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely." *Id.*; *see also Duan v. Zamberry*, No. 06-1351, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007) ("The subchapter at issue [section 1255(a)] specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing. Given the absence of an explicit provision to that effect, . . . Section 1252(a)(2)(B)(ii) [is] inapplicable to a claim of adjudicatory delay.").

Section 1255(a) is not at issue here. But section 1184(a)(1), like section 1255(a), "says nothing about the pace of . . . a decision." *Upchurch*, 496 F. Supp. 2d at 573. This makes *Upchurch* particularly persuasive, even in the U Visa context.

In sum, this Court has jurisdiction to review claims that the USCIS failed to adjudicate Plaintiffs' U Visa petitions within a reasonable time.

        *ii.*        *Mandamus Act*

The Mandamus Act is inapplicable because the APA affords jurisdiction to review Plaintiffs' claims of unreasonable delay. "To establish jurisdiction under the Mandamus Act, a plaintiff must be able to show that: (1) plaintiff has a clear right to relief; (2) defendant has a clear nondiscretionary duty to act; and (3) that no other adequate remedy is available." *Wolfe*, 2021 WL

4149186, at *8 (citing *Harmon Cove Condo. Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987)).  Above, the Court concluded that the APA "provides a remedy for unlawfully delayed agency action."  *Ruiz v. Wolf*, No. 20 C 4276, 2020 WL 6701100, at *5 (N.D. Ill. Nov. 13, 2020) (internal quotation marks and citation omitted).  An adequate remedy is available under the APA, so "mandamus is not necessary for relief."  *Id.* (internal quotation marks and citation omitted); *see also Wolfe*, 2021 WL 4149186, at *8 ("Because Plaintiff has a potential remedy under the APA, she cannot meet the requirements for a writ of mandamus . . . .").

   *iii.*   *Employment Authorization*

   Plaintiffs also ask the Court to find that USCIS "has a nondiscretionary duty to . . . grant [Jane Doe #1] employment authorization."  Compl. ¶ 64 (citing 8 C.F.R. § 214.14(d)(2)).

   Recall that the INA bars judicial review of decisions or actions "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  The statute and regulation in the employment authorization context expressly vest the Government with discretion.  *See* 8 U.S.C. § 1184(p)(6) ("The Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status . . . ." (emphasis added)); 8 C.F.R. § 214.14(d)(2) ("USCIS, *in its discretion*, *may* authorize employment for such petitioners and qualifying family members." (emphasis added)).

   Indeed, the plain language of section 1184(p)(6) (and the accompanying regulation) does not "require[] the agency to do anything."  *Gonzalez*, 985 F.3d at 366.  Rather, the "language makes it clear that an individual *may* be granted a temporary work authorization when they have a pending bona fide petition."  *Wolfe*, 2021 WL 4149186, at *6 (citing 8 C.F.R. § 214.14(d)(2)).  Therefore, to the extent Plaintiffs raise a claim regarding employment authorization, the Court

lacks subject-matter jurisdiction to consider the request.  *See, e.g.*, *id.* (dismissing work authorization claims); *Mondragon Tinoco*, 2021 WL 3603373, at *9 (same); *Vasquez v. Mayorkas*, No. 5:20-cv-00025, 2021 WL 4167323, at *7 (W.D. Va. Sept. 13, 2021) (same); *Moreno*, 2021 WL 4272345, at *6–7 (same); *Gonzalez*, 985 F.3d at 371 (same).

### B.      Failure to State a Claim

The Government also seeks dismissal of the Complaint for failure to state a claim, arguing that "the mere passage of time is insufficient to sustain a claim of unreasonable delay."  Defs.' Mem. 17.  Other courts have rejected this argument, particularly where, as here, plaintiffs have been waiting *years* for agency action.  *See, e.g.*, *McAleenan*, No. 19-2216, slip op. at 4 n.1 ("[A] waiting period of almost four years states a plausible claim for relief from unreasonable delay."); *Wolfe*, 2021 WL 4149186, at *9; *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383–84 (M.D. Ga. 2019) ("[T]he Court cannot find as a matter of law that Defendants' four-year delay in deciding whether to place Plaintiff on the U Visa waiting list was reasonable."); *Solis v. Cissna*, No. 9:18-00083-MBS, 2018 WL 3819099, at *4–5 (D.S.C. Aug. 10, 2018); *Haus v. Nielsen*, No. 17 C 4972, 2018 WL 1035870, at *4 (N.D. Ill. Feb. 23, 2018).

Moreover, a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375; *see also Gonzalez v. U.S. Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1129–30 (E.D. Cal. 2020) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").  Such claims turn on application of a multi-factor balancing test.[8]  The

---

[8]      Some courts look to the six factors prescribed in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) [hereinafter, "TRAC"]; *see also* Defs.' Mem. 9 n.10.  "While TRAC is persuasive, the Third Circuit articulated its own set of factors regarding reasonableness under the APA."  *Daraji v. Monica*, No. 07-1749, 2008 WL 183643, at *5 (E.D. Pa. Jan. 18, 2008).  The Third Circuit announced those factors in *Oil, Chemical,*

Government would have this Court weigh those factors at this early stage of the proceedings.  *See*

Defs.' Mem. 17–25.  The Court declines to do so.

## V.    CONCLUSION

This Court can review Plaintiffs' claims of unreasonable delay under the APA, so the

Mandamus Act does not apply and Count II is dismissed for lack of subject-matter jurisdiction.

To the extent Count I raises claims concerning the USCIS' duty to issue employment authorization,

those claims are dismissed for lack of subject-matter jurisdiction.  The remainder of Plaintiffs'

claims may proceed.  An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

& *Atomic Workers Union v. Occupational Safety & Health Administration*, 145 F.3d 120 (3d Cir. 1998) [hereinafter, "OCAWU"].  Under *OCAWU*, courts consider the following:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act.  Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action.  Third, the court should assess the consequences of the agency's delay.  Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*OCAWU*, 145 F.3d at 123 (internal quotation marks and citation omitted).

Indeed, "[i]t is possible that the USCIS may be able to . . . prove that their delay is reasonable due to issues such as resource constraints, competing priorities, etc." *Wolfe*, 2021 WL 4149186, at *9.  But without the benefit of a fully developed record, the Court declines to conclude as much.  *See id.*; *see also Gonzalez*, 985 F.3d at 376; *Gonzalez*, 500 F. Supp. 3d at 1130 ("[T]his court agrees with other district courts that have found that it would be premature at the motion to dismiss stage to consider the exact sources of the delay to determine whether the delay was actually unreasonable under the circumstances." (internal quotation marks and citations omitted)).